UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MT HAWLEY INSURANCE COMPANY | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-270 |
| | § § | |
| TFP PROPERTIES III LLC, | § § | |
| Defendant. | § § § | |

## ORDER ON MOTION TO EXCLUDE

Mt. Hawley Insurance Company (Mt. Hawley) filed this action against TFP Properties III, LLC (TFP) asserting that it had paid all sums owing under a property casualty policy on a commercial property damaged by Hurricane Harvey. D.E. 1. Before the Court is Mt. Hawley's motion to exclude TFP's property valuation expert (D.E. 43), along with TFP's response (D.E. 49) and Mt. Hawley's reply (D.E. 53). For the reasons set out below, the Court DENIES the motion.

### STANDARD OF REVIEW

Before expert testimony may be submitted to the jury, the court must act as a gatekeeper by "making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony . . . properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). *Daubert* and its principles apply to both scientific and non–scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Courts need not admit testimony that is based

purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Ultimately, the court's determination regarding the admissibility of evidence under *Daubert* is subject to an abuse of discretion standard. Id. at 142.

## DISCUSSION

Mt. Hawley challenges the expert testimony of Sean Wiley, a general contractor doing business as JW Construction and who has experience as an insurance adjuster, having previously performed work for Mt. Hawley's parent company. D.E. 49, p. 6 n.2. Mt. Hawley states no complaint regarding Wiley's experience, qualifications, or the relevance of his opinion. Rather, Mt. Hawley contends that there is a "complete lack of foundation for Wiley's valuation," thus challenging the reliability of his opinion. D.E. 53, p. 2.

Wiley explained that he used the internet and called supply houses to investigate pricing of materials. He also contacted subcontractors who do the specific tasks necessary to research labor costs, just as he would to bid any construction project. He compiled his results into task-based unit costs, which combined labor and materials. D.E. 43-1, p. 16. He produced an itemized bid of unit costs per square foot, along with a calculation of the total that sets out the square footage involved for each task. D.E. 43-1. Wiley testified that this is the ordinary practice for compiling a construction bid and Mt. Hawley has not demonstrated that the standard of the industry requires any other methodology for researching and assessing costs or for assembling bids.

Instead, Mt. Hawley's real complaint is that Wiley did not keep notes detailing his research to reveal the specific sources of his cost estimates. Neither could he testify as to

whether he included certain items such as architectural fees, permit fees, sales tax, and overhead or profit. In that regard, Mt. Hawley likens this case *to James River Ins. Co. v. Rapid Funding, LLC*, No. 07–cv–01146–CMA–BNB, 2009 WL 481688 (D. Colo. February 24, 2009), *rev'd on other grounds*, 658 F.3d 1207 (10th Cir. 2011).[1]

The *James River* case involved the insured's purchase of a condemned apartment property two weeks after securing an insurance policy with a term of six months. The policy covered multiple properties across a number of states. The purchase price for the three buildings in the condemned apartment complex, combined, was $1.8 million. The policy limits were $3 million as applied to the apartment property. Three months after the purchase, one of the buildings on the property was destroyed by a fire, the result of suspected arson. The insurance company valued the property at zero or a negative value because it had been condemned, was vacant, and remained uninhabitable. The carrier paid the cost of demolition and fire department charges.

The insured did not hire an expert, but valued the property himself by coming up with a replacement value of over $7 million and allowing for 40% depreciation, resulting in a claim value of $4,489,731, well over the original purchase price for all three buildings. The insured thus claimed the $3 million policy limits. There were a number of problems with this opinion. For instance, there was no established basis for the way

---

[1] After excluding the insured's testimony as expert testimony under Rule 702, the trial court permitted it as lay testimony under Rule 701. The Tenth Circuit, considering appeals of both issues, ruled that the testimony was not proper expert testimony and was improperly admitted as lay testimony. Because admission was harmful, the court of appeals reversed. *James River Ins. Co. v. Rapid Funding, LLC*, No. 07-CV-01146-CMA-BNB, 2010 WL 965523, at *2 (D. Colo. Mar. 16, 2010), *rev'd and remanded*, 658 F.3d 1207 (10th Cir. 2011).

the insured arrived at a 40% depreciation formula, which is contrary to IRS methodologies.

For our purposes, the problem was a lack of facts or data to support the two numbers offered: replacement value and cost to bring the property up to that value. There was no discussion of what work would be required or the cost of doing that work. Instead, the insured testified that he had a "feeling" for such matters and that he essentially intuited these numbers based on his assessment of the pre-fire status of the building. None of this approach is an accepted methodology or testable fact. Therefore, the court excluded the testimony.

The same result does not obtain here. The property is available for inspection to determine what work is necessary. There is no challenge to Wiley's methodology. And he has itemized the proposed work and his estimate of the unit prices for performing that work. These are numbers that can be tested, should Mt. Hawley choose to have its expert also look into the cost of materials and labor for the listed tasks and confirm the square footage involved for each. Wiley's source was not his own "feeling," but multiple suppliers and subcontractors familiar with the type of work to be done. The fact that he did not keep a record of the specific sources for his estimate does not preclude Mt. Hawley from consulting appropriate sources to see if the numbers Wiley came up with are supportable.

Such issues go to the weight of the testimony rather than its admissibility and are fair subjects for cross-examination. *See generally*, *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *United States v 14.38 Acres of*

*Land,* 80 F.3d 1074, 1078 (5th Cir. 1996); *Dinker v Nationwide Mutual Ins. Co.*, No. C-10-CV-315, 2013 WL 6813900 (S.D. Tex. Dec. 23, 2013).

## CONCLUSION

Mt. Hawley's motion to exclude (D.E. 43) is DENIED.

ORDERED this 19th day of July, 2019.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE